IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AROK ATEM, | ) |
| | ) |
| Plaintiff, | ) 4:13CV3017 |
| | ) |
| v. | ) |
| | ) **MEMORANDUM** |
| COUNTY OF LANCASTER, et al., | ) **AND ORDER** |
| | ) |
| Defendants. | ) |
| | ) |

    This is a 42 U.S.C. § 1983 and state-law negligence action originally brought on January 23, 2013, against Lancaster County, Nebraska, and several of its correctional administrators, supervisors, policymakers, officers, specialists, and nurses for their alleged deliberate indifference[1] to Plaintiff's medical needs during his incarceration on April 30 and May 1, 2011.

## I. FACTUAL BACKGROUND

    According to the operative complaint—Plaintiff's June 22, 2015, Fourth Amended Complaint (Filing 232)—Plaintiff was being evaluated for psychiatric illness and minor abrasions at BryanLGH Medical Center West in Lincoln, Nebraska, on April 29, 2011. During the evaluation, Plaintiff was combative, agitated, and confused; argued with non-existent people; and expressed suicidal and hallucinatory thoughts. After Plaintiff threw a telephone and computer monitor, Plaintiff was arrested and booked into the Lancaster County Intake & Detention Center. Plaintiff claims that when he left BryanLGH, he was ambulatory and showed no signs of neurologic injury.

---

[1] Specifically, Plaintiff alleges that he was deprived of his constitutional liberty interests in due process, equal protection, bodily integrity, and being free from indifference to his medical—including mental health—needs. (Filing 232, Fourth Amended Complaint.)

The booking officer at the Lancaster County Intake & Detention Center documented Plaintiff's statements that he had left-leg pain and needed asthma medication, but did not record anything about Plaintiff claiming he was numb below the waist and had a "big problem with [his] neck," as defendant Stacy Ruiz, LPN, asserts. Plaintiff was first placed in a holding cell where he was observed wrapping a t-shirt around his neck, making suicidal statements and gestures, and smearing feces and urine on his body to get "rid of bad sprits." (Filing 232 at CM/ECF p. 4.) Based on these observations, some of the defendants removed Plaintiff from his cell, during which Plaintiff went limp and dropped to the floor. He was lifted from the floor, placed in a therapeutic restraint chair, and rolled into a suicide-observation cell, where Plaintiff continued to yell unintelligible statements at unseen people.

Plaintiff alleges that none of the defendants performed a suicide-behavior assessment, summoned a corrections specialist to do a mental-health assessment, or contacted a nurse to do a medical assessment on Plaintiff. Defendants also allegedly failed to remove water and urine from the holding-cell floor and left Plaintiff lying on the cell floor without medical or mental evaluation for 36 hours, despite having observed Plaintiff's lack of movement and his statements that he could not sit up or move.

Plaintiff was then transported to BryanLGH Medical Center East, where he was diagnosed with a multilevel fracture to his cervical spine with a complete cord lesion and then underwent spinal surgery. Plaintiff is now quadriplegic. Contrary to defendant Stacy Ruiz's contention that Plaintiff must have sustained his spinal fracture before his arrival at the Lancaster County Intake & Detention Center, Plaintiff's spinal surgeon opined that the nature of Plaintiff's injury "would ordinarily paralyze a patient immediately," making ambulation unlikely. (Filing 232 at CM/ECF p. 10.)

In Plaintiff's motion for leave to file a Fourth Amended Complaint, Plaintiff's counsel specifically stated that "[Plaintiff] is withdrawing allegations that any individual Defendant caused his cervical fracture, after [Plaintiff]'s best efforts to identify discoverable information on this point." (Filing 209 at CM/ECF p. 2.) The

Fourth Amended Complaint alleges that none of the defendants have "identified how [Plaintiff] sustained his spinal cord injury," and that Plaintiff "is amnesiac and mentally ill and is incompetent to recall and describe how he sustained injury." (Filing 232 at CM/ECF p. 11.) In addition, portions of video footage of Plaintiff's incarceration are missing, as is medical information. Accordingly, Plaintiff's request for compensatory damages does not include medical expenses and is explicitly limited to payment for "physical and mental pain and suffering during his incarceration on April 30 and May 1, 2011," "delay in arresting progression of the spinal cord lesion" if Plaintiff indeed was injured before he entered the detention center, and violation of Plaintiff's constitutional rights; punitive damages; attorneys' fees; and costs. (Filing 232 at CM/ECF p. 23.)

## II. NDHHS's INVOLVEMENT, SETTLEMENT, AND COMPLAINT IN INTERVENTION

### A. NDHHS's Involvement

On April 1, 2013—a little over two months after Plaintiff filed this lawsuit—the Nebraska Department of Health and Human Services ("NDHHS") sent to Plaintiff's counsel a Notice of Subrogation and Assignment which stated that because Plaintiff had filed an application for medical benefits under the Nebraska Medical Assistance Program, NDHHS had a statutory right to subrogation as to "every claim or right which the applicant may have against a third party when such right or claim involves money for medical care." (Filing 310-1 at CM/ECF p. 6.) Specifically, Plaintiff's application for benefits constituted an automatic assignment of rights "to pursue or receive payments from any third party liable to pay for the cost of medical care and services arising out of injury, disease, or disability of the applicant or recipient of medical benefits." (*Id.*) As of the date of this notice, the "amount subrogated" according to NDHHS was $389,063.89.

After two years of discovery and multiple amended complaints, Plaintiff's counsel advised NDHHS and other lienholders by letter dated September 2, 2015, that

3

the Fourth Amended Complaint was "not seeking damages for medical expense (past or future) or disability (past or future). . . . We are only seeking damages for 44 hours of physical and emotional pain and suffering, to include the suffering precipitated by untreated mental illness (which he had upon his arrival to the jail) and compounded by his physical injury." Counsel included a copy of the Fourth Amended Complaint with the letter. (Filing 310-1 at CM/ECF p. 9.)

A lawyer from NDHHS responded by letter on September 29, 2015, indicating NDHHS's interest in "discuss[ing] . . . amending the complaint to pursue medical claims." (Filing 310-1 at CM/ECF p. 12.) In a subsequent telephone conversation between Plaintiff's counsel and NDHHS's counsel regarding NDHHS's request that the Fourth Amended Complaint include a claim for past medical expenses, Plaintiff's counsel indicated that she "had originally included such a claim in the first Complaint, but . . . [she] had dismissed it" because "the course of extensive discovery had revealed evidentiary challenges in proving that Defendants caused or contributed to the cervical fracture which led to [Plaintiff's] spinal cord injury." (Filing 310-1 at CM/ECF p. 3.)

The NDHHS lawyer stated that he would "get back" to Plaintiff's counsel "whether NDHHS agreed with [her] assessment of the evidence developed to date." (*Id*.) NDHHS did not further communicate with Plaintiff's counsel until a December 8, 2015, hearing in Lancaster County Court on Plaintiff's Petition to Establish a Special Needs Trust.[2] (*Id*.)

## B. Settlement

On October 29, 2015, all parties <u>except</u> defendant Stacy Ruiz, LPN, reached a settlement, which was approved by Magistrate Judge Zwart. (Filing 297, Sealed Transcript of Settlement Conference.) The parties stated on the record that:

---

[2]The Lancaster County Court stayed disposition of Plaintiff's Petition to Establish a Special Needs Trust after NDHHS filed its motion to intervene in this action. (Filing 310-1 at CM/ECF p. 4.)

> Number one, plaintiff's cervical fracture occurred while he was incarcerated at the Lancaster County Correctional Center on April 30th or May 1st, 2011.
>
> . . . .
>
> Number two, the cervical fracture was not caused by any of the settling defendants. The cause and effect of Arok's cervical fracture, paralysis, and other related issues are not elements of damages.
>
> Number three, Arok's claimed damages are limited to, number one, damages for pain and suffering during the actual period of incarceration on April 30th and May 1st, 2011. Number two, punitive damages. And, number three, attorney's fees, expenses, and costs as permitted by federal law.
>
> From the settling defendants only, Arok is not claiming and may not recover any other type of special, general, or economic damage, including damages for future medical expenses.

(Filing 297 at CM/ECF p. 14 (spacing altered).)

Further, Magistrate Judge Zwart ordered that the settlement funds be placed into a special needs trust for Plaintiff's care. (*Id*. at CM/ECF p. 21.) NDHHS did not ask to participate in the settlement conference.

## C. Complaint in Intervention

Despite the parties' settlement, on January 18, 2016, Magistrate Judge Zwart granted NDHHS's December 11, 2015, motion to intervene[3] in this matter pursuant to

---

[3]NDHHS did not file its motion to intervene until 101 days after Plaintiff's counsel mailed to NDHHS a letter specifically stating that Plaintiff was no longer seeking damages for medical expenses or disability, along with a copy of the Fourth Amended Complaint. (Filing 310-1, Letter Dated Sept. 2, 2015; Filing 292, Motion to Intervene Dated Dec. 11, 2015.)

5

Fed. R. Civ. P. 24(a).[4] (Filing 292; Filing 303 (text order).) NDHHS filed its petition in intervention (Filing 304) on January 21, 2016, "for the limited purpose of protecting its statutory assignment and subrogation interests" in "any proposed settlement or judgment of the subject of this action" because no existing party represents NDHHS's interests and disposing of this action may "impair or impede its ability to protect its interest." (Filing 304 at CM/ECF p. 1 (citing Fed. R. Civ. P. 24(a)).)

NDHHS's petition in intervention alleges that: (1) it has paid $545,767.46 in Medicaid benefits "relative to the underlying injury for which the proposed settlement would provide compensation"; (2) beneficiaries of Medicaid by law assign to NDHHS any rights to payment from a responsible third party; (3) NDHHS is required by state and federal law to "take all reasonable measures to ascertain the legal liability of third parties" for medical expenses paid by NDHHS and to seek reimbursement for medical assistance "to the extent of such legal liability"; (4) it "would strain the bounds of credulity for any settlement with the responsible third-party tortfeasor to be characterized as not including reimbursement for medical bills incurred as a result of the injury"; (5) the court should not approve the pending settlement "because it ignores or would effectively eviscerate NDHHS's assignment and subrogation interests"; and (6) the court should declare the amount of NDHHS's assignment and subrogation interests out of the settlement after a hearing thereon. (Filing 304 (citing 42 U.S.C. §1396a(a)(25)(A)-(B), 42 U.S.C. § 1396k(a)(1)(A), and Neb. Rev. Stat. § 68-906).)

---

[4] **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:

> **(1)** is given an unconditional right to intervene by a federal statute; or
>
> **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

### III.  PENDING MOTIONS

Pending before the court are motions for summary judgment on NDHHS's petition in intervention filed by Plaintiff (Filing 308) and all defendants except Stacy Ruiz, LPN (Filing 313), as well as Plaintiff's motion to dismiss all defendants with whom Plaintiff has reached a settlement (Filing 317).

### A.  Motions for Summary Judgment

Plaintiff and all defendants except defendant Stacy Ruiz, LPN, make two main arguments in their motions (Filings 308 & 313) for summary judgment on NDHHS's petition in intervention—(1) NDHHS should not have been allowed to intervene in this matter, and (2) federal statutory and case law only allow NDHHS to recoup Medicaid payments from settlement proceeds that represent payments for medical expenses, and medical expenses are *not* part of the settlement at here, as expressly indicated by the above-referenced letters, telephone discussions, and transcript from the settlement conference that limit the settlement to damages for pain and suffering for the period of Plaintiff's incarceration, punitive damages, and attorneys' fees.

NDHHS counters that it is statutorily obligated to pursue subrogation for medical bills it has paid on behalf of Medicaid recipients, including ascertaining the legal liability of third parties for medical expenses paid by NDHHS and seeking reimbursement accordingly. NDHHS asks this court not to "completely let the Plaintiff of[f] the hook for reimbursing the taxpayers for over six-hundred-thousand dollars in Medicaid medical assistance rendered to treat his paralysis."  (Filing 315 at CM/ECF p. 5.)

#### 1.  Allowing NDHHS to Intervene

Plaintiff and all defendants except Stacy Ruiz, LPN, first argue that NDHHS should not have been allowed to intervene in this matter.  The docket sheet for this case indicates that while counsel for all parties filed a motion (Filing 296) to extend the time

to respond to NDHHS's motion to intervene, counsel did not actually file an objection to the motion (Filing 292),[5] nor did counsel file, pursuant to NECivR 72.2(a), an objection to the Magistrate Judge Zwart's order (Filing 303 (text order)) granting the motion to intervene.[6] In the absence of such objections, I shall not second-guess the Magistrate Judge's order on a motion that was clearly within her purview.

> The prevailing view is that the district judge may—but need not—consider an argument that was not first presented to the magistrate judge. In general, granting review of new arguments is disfavored based on: (1) the concern that doing so undermines the efficiencies that the magistrate judge system is designed to provide; and (2) the sense that it would be unfair to allow a party to try one strategy before the magistrate judge and then, having failed in that, adopt a different strategy before the district judge.

Steven S. Gensler, 2 *Federal Rules of Civil Procedure, Rules and Commentary: Rule 72* (Westlaw 2016) ("The prevailing view is that a motion to intervene is a nondispositive matter referable to a magistrate judge for determination under Rule 72(a)." (footnote omitted)).

Therefore, I shall not grant the motions for summary judgment (Filings 308 & 313) on this ground.

---

[5]Curiously, Plaintiff's counsel did file an objection (Filing 307 (Feb. 12, 2016)) to portions of evidence filed in support of NDHHS's motion to intervene (Filing 295-1 (Dec. 23, 2015)) almost a month *after* Magistrate Judge Zwart granted the motion to intervene (Filing 303, Jan. 18, 2016, Text Order).

[6]However, Plaintiff's answer to NDHHS's motion to intervene does assert that "Plaintiff denies that Federal Rule of Civil Procedure 24(a) authorizes this Petition." (Filing 306.)

## 2. NDHHS's Ability to Recoup Medicaid Payments From Settlement

The parties' second ground for summary judgment on NDHHS's petition in intervention is that federal law only allows NDHHS to recoup Medicaid payments from settlement proceeds that represent payments for ***medical expenses***, and such expenses were expressly excluded from the parties' on-the-record settlement agreement in this case.

Federal law requires that states, in administering their Medicaid programs, "seek reimbursement for medical expenses incurred on behalf of beneficiaries who later recover from third-party tortfeasors." *Wos v. E.M.A. ex rel. Johnson*, 133 S. Ct. 1391, 1396 (2013). Specifically, state plans for medical assistance must "provide that, as a condition of eligibility for medical assistance," beneficiaries must "assign the State any rights . . . to payment for medical care from any third party." 42 U.S.C. § 1396k(a)(1)(A). States receiving Medicaid funds are also required to:

> ha[ve] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services[.]

42 U.S.C. § 1396a(a)(25)(H). Furthermore:

> A State plan for medical assistance must . . . provide . . . that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties . . . to pay for care and services available under the plan [and] . . . that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual . . . the State or local agency will seek reimbursement for such assistance to the extent of such legal liability . . . .

42 U.S.C. §1396a(a)(25)(A)-(B).

Somewhat in "tension" with these provisions, *Wos*, 133 S. Ct. at 1396, is what is commonly called the "federal anti-lien provision," which prohibits states from imposing a lien "against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan." 42 U.S.C. § 1396p(a)(1).

The Supreme Court addressed the interplay between these federal statutes in *Arkansas Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268 (2006). In *Ahlborn*, a Medicaid recipient settled a personal-injury lawsuit for $550,000 after Medicaid had paid medical costs on the recipient's behalf, but the parties did not earmark portions of the settlement as representing various types of damages. The state Medicaid agency did not seek to participate in settlement negotiations, but did assert a lien against the settlement proceeds for $215,645.30—the total amount of payments made by the agency for the plaintiff's care. The plaintiff filed a lawsuit in federal district court seeking a declaration that the agency's lien violated federal Medicaid laws because the agency was only entitled to the portion of the settlement that represented medical expenses, which the parties stipulated to be $35,581.47.

The *Ahlborn* Court found that § 1396a(a)(25)(H) "does not sanction an assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance," and that "the federal third-party liability provisions require an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care." *Id*. at 281-82. Addressing the tension between sections 1396a(a)(25) and 1396k(a)—which require Medicaid beneficiaries to assign to the state the right to receive payments for medical care—and the anti-lien provision, 42 U.S.C. § 1396p(a)(1), the Court clarified that the assignment statutes are "limited to payments for medical care. Beyond that, the anti-lien provision applies." *Id*. at 284.

Based on its construction of these Medicaid statutes, the Court concluded that a state law that automatically imposed a lien on the parties' settlement for the amount of Medicaid's costs violated the anti-lien provision of the federal Medicaid laws because

10

the state may not "lay claim to more than the portion of [the plaintiff's] settlement that represents medical expenses." *Ahlborn*, 547 U.S. at 280. Thus, the state Medicaid agency could not assert a lien on the plaintiff's settlement amount for more than $35,581.47, which was the portion of the settlement that the parties stipulated to be medical expenses.

In *Wos*, the Supreme Court confirmed that the federal anti-lien provision preempted "a State's effort to take any portion of a Medicaid beneficiary's tort judgment or settlement not 'designated as payments for medical care.'" *Wos*, 133 S. Ct. at 1395-96 (quoting *Ahlborn*, 547 U.S. at 284). In that case, a state statute arbitrarily required that up to one-third[7] of any damages recovered by a Medicaid beneficiary for tortious injury be paid to the state to reimburse it for payments made for medical treatment due to injury, even if the parties' settlement agreement expressly allocated a lower percentage to medical expenses.

The parties in *Wos* reached a $2.8 million settlement as to the plaintiff's medical malpractice claims, but did not expressly allocate portions of the settlement to specific claims and types of damages. Pursuant to the state statute, the court placed one-third of the settlement amount in escrow until the actual amount owed to the state could be "conclusively judicially determined." *Id*. at 1396. The plaintiff then filed a lawsuit in federal district court, claiming that the state statute violated the anti-lien provision of federal Medicaid laws, 42 U.S.C. § 1396p(a)(1).

The issue in *Wos* that was not addressed in *Ahlborn* was "how to determine what portion of a settlement represents payment for medical care." *Wos*, 133 S. Ct. at 1397. The Court concluded that when a jury verdict, court decree, or stipulation between the parties allocates between medical and nonmedical damages, "that is the end of the

---

[7]The statute, as interpreted by the state court, defined the portion of a settlement that represents payment for medical expenses as being the lesser of the state's past medical expenditures or one-third of the beneficiary's tort recovery. *Wos*, 133 S. Ct. at 1397.

11

matter," and "the [federal] anti-lien provision protects from state demand the portion of a beneficiary's tort recovery that the stipulation or judgment does not attribute to medical expenses." *Id*. at 1399. In other words, the Medicaid Act clearly mandates that "a State may not demand any portion of a beneficiary's tort recovery except the share that is attributable to medical expenses." *Id*. Therefore, the Court held, the state statute that permitted the state to take an arbitrary portion of a Medicaid beneficiary's tort settlement that was "not designated as payments for medical care" violated the Medicaid anti-lien provision, 42 U.S.C. § 1396p(a)(1). *Id*. at 1402.

In the case now before me, NDHHS correctly observes that federal Medicaid statutes, discussed above, obligate it to pursue subrogation for medical bills it has paid on behalf of Medicaid recipients, including ascertaining the legal liability of third parties. However, the Supreme Court has specifically stated that those federal statutes are "limited to payments for medical care. Beyond that, the anti-lien provision applies." *Ahlborn*, 547 U.S. at 284. Here, Plaintiff's medical expenses are **not** part of his settlement, as expressly indicated by the uncontroverted evidence on file, which contains affidavits, letters, and the transcript from the settlement conference that explicitly limit the settlement to damages for pain and suffering for the period of Plaintiff's incarceration, punitive damages, and attorneys' fees.

Under these circumstances, the Medicaid anti-lien provision, 42 U.S.C. § 1396p(a)(1), precludes NDHHS from demanding any portion of Plaintiff's settlement. *Ahlborn*, 547 U.S. at 280; *Wos*, 133 S. Ct. at 1399; *see also Wilhoite v. Missouri Dep't of Soc. Servs. ex rel. Levy*, No. 2:10-CV-03026, 2012 WL 3723304, at *4 (W.D. Mo. Aug. 27, 2012) (in case where parties agreed that plaintiff's tort settlement did not include recovery for medical expenses, court granted summary judgment in favor of plaintiff and against state Medicaid agency on issue of whether agency violated federal anti-lien statute when it placed lien on plaintiff's settlement; stating that "[f]ederal law precluded [the state Medicaid agency] from asserting any lien on [plaintiff] under these circumstances, and the entire amount of [the agency's] lien is invalid").

From a practical standpoint, I cannot construe federal law to authorize NDHHS to force parties to abandon a voluntary settlement agreement and require those parties to litigate a claim for medical expenses when, after years of discovery, Plaintiff's counsel has sworn that the evidence does not support such a claim. Because the settlement agreement in this case—preserved on the record—expressly does not include recovery for medical expenses, NDHHS is not entitled to any portion of the settlement proceeds, and I shall not reject the parties' pending settlement on that basis. *See, e.g.,* [Smalley v. Nebraska Dep't of Health & Human Servs., 811 N.W.2d 246, 257 (Neb. 2012)](#) (in case analyzing validity of agreement between injured plaintiff and NDHHS regarding NDHHS's promise to pay plaintiff's medical bills at discounted Medicaid rate in exchange for plaintiff's promise to fully reimburse NDHHS for $130,000 from $800,000 personal-injury settlement, "district court should have looked no further than the agreement between the parties" to find that plaintiff agreed that $130,000 of the total settlement related to medical expenses; "states are generally free to employ any reasonable means to determine what portion of a settlement relates to medical expenses and is therefore recoverable by a state Medicaid administrator"); [Gardiner v. A.H. Robins Co., 747 F.2d 1180, 1189 (8th Cir. 1984)](#) ("In ordinary litigation, that is, lawsuits between private parties, courts recognize that settlement of the dispute is solely in the hands of the parties. . . . If the parties can agree to terms, they are free to settle the litigation at any time, and the court need not and should not get involved. . . . [T]he traditional view is that the judge merely resolves issues submitted to him by the parties . . . and stands indifferent when the parties, for whatever reason commends itself to them, choose to settle a litigation." (internal quotations and citations omitted; citing cases)).

Accordingly, summary judgment must be granted in favor of Plaintiff and all defendants except Stacy Ruiz, LPN, on NDHHS's petition in intervention.

### B.  Motion to Dismiss Settling Defendants

Plaintiff moves to dismiss his claims against those defendants with whom Plaintiff reached settlement at the October 29, 2015, settlement conference—

specifically, defendants County of Lancaster, Nebraska, Michael Thurber, Terry Weber, Derek Contreras, Virginia Prey, Adam Rettig, Brent Wrinkle, Chad Burpee, Michael Kinney, Margaret Riege, Nicholas Noel, Laura Hilt, Douglas Diltz, Jeremy Lybarger, Rod Fazi, Jeran Smith, Thomas Diaz, Kelly Ward, and Alicia Renville.[8] (Filing 317.) The settling defendants consent to Plaintiff's motion to dismiss (Filing 324), and NDHHS objects because of its "assignment and subrogation interest." (Filing 318 at CM/ECF p. 2.)

I shall grant Plaintiff's motion because: (1) a settlement between litigating parties "is solely in the hands of the parties," who are "free to settle the litigation at any time, and the court need not and should not get involved," *Gardiner*, 747 F.2d at 1189 (internal quotations and citations omitted); (2) I have granted summary judgment in favor of Plaintiff and all defendants except Stacy Ruiz, LPN, on NDHHS's petition in intervention; (3) there are no unresolved claims remaining against the settling defendants, as NDHHS's petition does not assert claims against any of these defendants, but was filed only "for the limited purpose of protecting its statutory assignment and subrogation interests" (Filing 304 ¶ 1); and (4) it is not apparent how NDHHS would be prejudiced by dismissal of the settling parties in light of the court's summary judgment ruling. *See Humane Society of the United States v. Merriam*, No. 06-2922, 2007 WL 333309 (D. Minn. Feb. 1, 2007) (where plaintiffs and defendants sought to dismiss case and intervenor-defendants objected, court dismissed case under Fed. R. Civ. P. 41(a)(2) because complaint contained no claims against intervenors, intervenors did not assert counterclaims against plaintiffs, and intervenors did not explain how they might be prejudiced by dismissal; "In general, voluntary dismissals under Rule 41(a)(2) are properly granted where the party opposing dismissal cannot demonstrate any legal prejudice (other than the possibility of a second lawsuit) resulting from the dismissal.").

---

[8]Plaintiff includes in his motion to dismiss (Filing 317) defendants Brian Hansen and Leighanne Loges, but these defendants were dismissed from this matter on April 6, 2015. (Filing 214.)

Accordingly,

IT IS ORDERED:

1. The motions for summary judgment on NDHHS's petition in intervention filed by Plaintiff (Filing 308) and all defendants except Stacy Ruiz, LPN, (Filing 313) are granted;

2. Plaintiff's motion to dismiss all defendants with whom Plaintiff has reached a settlement (Filing 317) is granted, and the following defendants are dismissed from this matter: County of Lancaster, Nebraska, Michael Thurber, Terry Weber, Derek Contreras, Virginia Prey, Adam Rettig, Brent Wrinkle, Chad Burpee, Michael Kinney, Margaret Riege, Nicholas Noel, Laura Hilt, Douglas Diltz, Jeremy Lybarger, Rod Fazi, Jeran Smith, Thomas Diaz, Kelly Ward, and Alicia Renville;

3. The motions to dismiss and for summary judgment filed by those defendants who have been dismissed from this matter (Filing 238; Filing 239; Filing 243) are denied as moot;

4. The only remaining defendant in this case is Stacy Ruiz, LPN;

5. On or before July 18, 2016, Plaintiff shall advise the court by letter (filed in CM/ECF) whether he wishes to proceed against defendant Stacy Ruiz, LPN; and

6. If Plaintiff plans to proceed against defendant Stacy Ruiz, LPN, Ruiz shall inform the court by letter (filed in CM/ECF) on or before July 28, 2016, whether she still wishes to assert her pending motion for summary judgment (Filing 236) in light of the court's rulings above.

7. Judgment is witheld.

DATED this 11th day of July, 2016.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge